FILED
SUPERIOR COURT
OF GUAM

2019 JUL 11 01 2: 03

CLERK OF COURT
BY:_____

# IN THE SUPERIOR COURT OF GUAM

TELEGUAM HOLDINGS, LLC dba
GTA,

                  PLAINTIFF,

           vs.

PACIFIC UNDERWATER
OBSERVATORIES, INC. dba
FISHEYE MARINE PARK

                DEFENDANT.

CIVIL CASE NO: CV0691-18

**DECISION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

## Introduction

This matter came before the Honorable Maria T. Cenzon on TeleGuam Holdings, LLC dba GTA's ("Plaintiff") Motion for Summary Judgment filed on March 18, 2019. Attorney Terrence Brooks of Brooks Concepcion Law, P.C. represents Plaintiff while Attorney Phillip Torres represents Pacific Underwater Observatories, Inc. dba Fisheye Marine Park ("Defendant"). The Court took the matter under advisement, without oral argument, pursuant to CVR 7.1 of the Local Rules of the Superior Court of Guam. Having reviewed the parties' arguments, the record and relevant law, the Court now issues this Decision and Order GRANTING Plaintiff's Motion for Summary Judgment.

## Background

This matter comes before the Court as a breach of contract claim between Plaintiff, a company that provides telecommunication services, and Defendant, a corporation that operates a tour facility. On September 2010, Plaintiff and Defendant entered into an agreement for the purchase of equipment and services from Plaintiff as stated in the Master Service Agreement

("MSA"). According to Plaintiff, on February 2016, the parties agreed to extend the MSA for an additional three-year term. The MSA contained an "early termination" provision that requires Defendant to pay for the remaining term of the contract if Defendant terminated the MSA early. On February 2018, Defendant provided Plaintiff with a termination of services letter.

On July 13, 2018, Plaintiff filed its Complaint requesting the Court to (1) enforce judgment awarding $13,770 for the principal amount owed pursuant to the MSA's early termination provision; (2) prejudgment interest at 18% per annum; (3) Plaintiff's attorney's fees of 15% of the amount due; (4) Plaintiff's costs of suit and (5) interest on the judgment at the legal rate of 6% per annum. Complaint (Jul. 13, 2018). Along with his Answer, Defendant filed a Counterclaim for damages as the result of Plaintiff's breach of the Platinum Service Agreement. Def. Ans. and Counterclaim (Sep. 6, 2018).

Plaintiff moved for summary judgment on March 18, 2019 together with the Declaration of Shana Bentley, Managing Director of Plaintiff's Small Business Markets. On April 18, 2019, Defendant opposed the instant motion as stated in the Defendant's Opposition to Plaintiff's Motion for Summary Judgment. Defendant subsequently filed the Declaration of Renny Loren, Senior Manager of Defendant, on April 22, 2019. Plaintiff detailed its response to Defendant's opposition in Plaintiff's Reply to Defendant's Opposition to Summary Judgment (May 7, 2019). Plaintiff subsequently filed a second Declaration of Shana Bentley on May 24, 2019.

## Applicable Law

### I. Summary Judgment Standard

Rule 56 of the Guam Rules of Civil Procedure regulates when a court may grant summary judgment. Guam R. Civ. P. 56. Summary Judgment is appropriate if the pleadings, depositions, interrogatories, and admissions on file together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Guam R. Civ. P. 56(c). *Iizuka Corp. v. Kawasho Int'l (Guam), Inc.*, 1997 Guam 10 ¶ 7.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted).

In deciding a motion for summary judgment, a court must draw inferences and view the evidence in a light most favorable to the non-moving party. *Bank of Guam v. Flores*, 2004 Guam 25 ¶ 7. If, however, the movant can demonstrate that there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the pleading but must produce at least some significant probative evidence to support the pleading. *Edwards v. Pacific Financial Corporation*, 2000 Guam 27 ¶ 7. *Edwards* defined a material fact as "one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *Id.* Disputes over irrelevant or unnecessary facts will not prevent a grant of summary judgment. *Id.* The Court recognizes that its "ultimate inquiry" is to decide "whether the 'specific facts' set by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *Id.*

A genuine issue of material fact precluding summary judgment exists "if there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *M.Electric Corp. v. Phil-Gets (Guam) Int'l Trading Corp.*, 2012 Guam 23 ¶ 11.

Defendant argues summary judgment is not proper because "material disputes of fact exist as to the obligations of the parties and interpretation of the parties' agreement." Def. Opp. at p. 2. (Apr. 18, 2019). The Court disagrees and finds the record demonstrates there are no genuine issues as to any material fact and therefore Plaintiff is entitled to judgment as a matter of law as further discussed below. Guam R. Civ. P. 56(c).

//

//

## II. Breach of Contract

As a preliminary matter, the Court recognizes the plain meaning language of a contract is a pure question of law. *Sharrock v. McCoy*, 2016 Guam 7, ¶ 10. "In construing what various terms in a contract mean, the task of the court is to discern and give legal effect to the intent of the parties at the time of contracting." *Wasson v. Berg*, 2007 Guam 16, ¶ 10 (citing 18 GCA § 87102 (2005); *Camacho v. Camacho,* 1997 Guam 5 ¶ 32; *Leon Guerrero v. Moylan*, 2000 Guam 28 ¶ 8). The *Wasson* court further opined "the intent of the parties to a contract is generally, and whenever possible, restricted by the plain meaning of the contract terms." *Id.* (citing *Camacho*, 1997 Guam 5 ¶ 33; 18 GCA § 87104 (2005)). The Guam Supreme Court adopted the traditional or "plain meaning" approach in *Wasson* and opined that courts are to "look to the four corners of the contract and determine whether, as a matter of law, any ambiguity exists." *Id.* ¶ 11 (citing 11 Richard A. Lord, Williston on Contracts § 30:5 (4th ed.1999); 5 Margaret N. Kniffin, Corbin on Contracts § 24.7 at 33 (Rev. ed.1998).

To establish a breach of contract claim, the plaintiff must prove: "(1) the existence of the contract, (2) the plaintiff's performance or excuse of nonperformance, (3) the defendant's breach, and (4) resulting damages to the Plaintiff." *Hemlani v. Hemlani,* 2015 Guam 16 ¶ 19. While Defendant raises trivial arguments relevant to the existence of a contract, the relevant filings in this case are arguments directed to the defendant's breach and resulting damages to Plaintiff, specifically whether the Court should enforce the "early termination" provision.[1]

### A. Existence of a Contract

Defendant contends Plaintiff did not sign the 2010 MSA and is therefore unenforceable. Def.'s Opp. at p. 2. Plaintiff in response argues this claim is unfounded as Guam law provides that performing the conditions of a proposal or accepting benefits of an obligation is an acceptance of and consent to the proposal as provided in Sections 85320 and 85325 of Title 18 of the Guam Code Annotated. Pl.'s Reply at pp. 1-2.

---

[1] The question whether a contractual provision is an unenforceable liquidated damages provision is one for the court. *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1314, 27 Cal. Rptr. 3d 797, 802 (2005)

"Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal." 18 GCA § 85320. While "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." *Id.* § 85325.

The Court agrees with Plaintiff and finds Defendant's argument is without merit. The 2010 and 2016 MSA here is enforceable without a signature since Defendant was aware of all the principal terms of the contract through its agent, Akihiro Tani. *See* Decl. of Shana Bentley, Ex. 1, pp. 2, 6 (Mar. 18, 2019); See also *Duenas v. George & Matilda Kallingal, P.C.,* 2012 Guam 4, ¶ 17. Further, both Plaintiff and Defendant proceeded to act upon the assumption that they had executed the MSAs and Defendant also accepted the benefits under the service contract. *Id.*; *See* also Decl. of Renny Loren (Apr. 22, 2019). Accordingly, the absence of Plaintiff's agent's signature does not affect the validity of the MSAs. *Duenas,* 2012 Guam 4 ¶ 17.

*B. Defendant's Breach*

Defendant also suggests that assuming the contract was enforceable, Defendant did not necessarily breach the contract because Section 5.0 of the MSA permits and excuses a customer from early termination charges when the cancellation was because of a service interruption. Def.'s Opp. at p. 2. Section 5.0 of the MSA provides:

> In the event the Customer cancels or terminates service at any time during the initial Term of this Agreement or any renewal thereof for any reason whatsoever *other than a service interruption* (as defined in Paragraph 4 above). Customer agrees to pay GTA as *liquidation damages* (and not as a penalty) the following sums which shall become due and owing as of the effective date of cancellation or termination and be payable in accordance with Paragraph 3 above:
>
> 1) All Non-recurring Charges specified In the Service Order and reasonably expended by GTA to establish service to the Customer:
> 2) Any disconnection, early cancellation, or termination charge reasonably incurred by GTA on behalf of Customer:
> 3) All Recurring Charges to which the Customer has agreed, discounted to a present value at 8% per year; and
> 4) The reasonable costs associated with the remove of all equipment specially ordered to service Customer, including: crating, shipping, and insurance

charges to return the equipment to the GTA facility nearest to the Customer if GTA can utilize the equipment.

(emphasis added). Paragraph 4 of the MSA defines a "service interruption" as:

Service interruption will be deemed to have occurred only *if service becomes unusable* to Customer as a result of GTA's facility, equipment, or personnel used to provide the service in question, and only *where the interruption is not the result of:* (I) *the negligence or acts of Customer or its agents,* (II) *the failure or malfunction or a non-GTA equipment or systems,* (III) circumstances or causes beyond the control of GTA; or (IV) a service interruption caused by maintenance, alteration, or implementation. Such credits will be granted only if: (a) Customer affords GTA full and free access to Customer's premises to make appropriate repairs, maintenance, testing, etc. and (b) Customer does not continue to use the service on an impaired basis.

(emphasis added).

Plaintiff repeatedly argues that Defendant did not have a right to terminate the MSA. Pl.'s Mot. For Summary Judgment, at p. 3. Specifically, Plaintiff points to Section 2.0 of the MSA which requires that "customers may terminate [the MSA] only upon a breach by GTA of a material provision of the agreement continuing for thirty (30) days after receipt of written notice thereof." *Id.* at p. 6. Plaintiff further argues that it was Defendant's equipment that caused the service interruption and that Plaintiff's line was working fine. *Id.* at pp. 2-3. According to Plaintiff, Defendant purchased the equipment - an Office PBX phone system- from Plaintiff in 2010. *Id.* The equipment had a one-year warranty, but that warranty expired in 2011 and Defendant's equipment was seven years old at the time it failed. *Id.* Plaintiff informed Defendant it had to replace its equipment, but Defendant declined and opted to purchase the equipment along with telecommunication services from another vendor. *Id.*

The Court finds the language of the MSA is unambiguous and will interpret the contract as written, in light of the MSA's plain language and the reasonable expectations of the parties. *Wasson v. Berg*, 2007 Guam 16, ¶ 16. Based on the language of the contract, the service interruption in this case was not protected by Paragraph 4 of the MSA since the service interruption was a result of Defendant's equipment failure and Defendant was advised to replace that equipment, but declined. Therefore, under the terms of the MSA, Defendant cannot invoke

the protections as stated in Section 5.0 since the service interruption was not one described in Paragraph 4.

*c. Resulting Damages*

Lastly, Defendant pleads that Plaintiff's request for "liquidated damages" is unenforceable. Defendant argues that liquidates damages clause fails to comply with Guam law and thus enforceable. To prove this, Defendant relies upon *BM Company v. Avery*, 2001 Guam 27. Defendant then argues that the requested liquidated damages are not reasonably related to Plaintiff's actual damages.

Plaintiff in response argues that the early termination fee is not a penalty but is part of the bargain for exchange citing a Ninth Circuit case *Schneider v. Verizon Servs., Inc.*, 400 F. App'x 136 (9th Cir. 2010). The *Schneider* court held that an early termination clause was not a penalty provision and reasoned "[the customer] availed himself of a defined-length plan that included certain discounts on up-front fees – fees that he would have incurred in a month-to-month plan. [The customer] did so, however, with the knowledge that if he wished to terminate the contract early, it would result in a set fee." 400 F. App'x at 138. With this information, the *Schneider* court recognized that the customer was presented with a rational choice, to take advantage of the lower fees but with the possibility of an early termination fee if the service is terminated early. *Id.*

The Court agrees with Plaintiff that the early termination fee is enforceable. The Court finds the reasoning in *Schneider* helpful. The Court further agrees with Plaintiff that Defendant entered an agreement for a specific term and obligated itself to pay through the end of the contract. The Court agrees that the provision does not require Defendant to pay more than it originally contracted to pay.

Assuming *arguendo* that the Court finds the early termination fee provision was a liquidated damage clause, Plaintiff alternatively argues it is still enforceable. Plaintiff cites to 20 GCA § 2203 and maintains that the label of the early termination provision in the MSA is irrelevant. Pl.'s Reply at pp.4-6. Plaintiff additionally relies upon *RSA 1 Ltd. P'ship v.*

*Paramount Software Assocs. Inc.*, 793 F. 3d 903 (8th Cir. 2015) in arguing that liquidated damage provisions are enforceable if: (1) the harm caused by the breach is incapable or difficult of estimation and (2) the amount of liquidated damages called for is a reasonable forecast of just compensation. *Id.* at 907.

The Court rejects Defendant's argument in reliance of *BM Company*, 2001 Guam 27 and finds this case does nothing to support Defendant's claim that the early termination charge in this case is a penalty or not reasonably related to the damages suffered by Plaintiff. Instead, the Guam Supreme Court in *BM Company* rejected Defendant's claim that the trial court erred in reducing the jury's award of liquidated damages and did not invalidate the liquidated damages provision. 2001 Guam 27 ¶ 1. The court addressed when the liquidated damage provision started and stopped accruing. The court then held that liquidated damages for a *construction* contract should cease accruing upon substantial completion unless the contract unambiguously provides otherwise. *Id.* at ¶¶ 16-19. This is inapplicable here since the "liquidated damages" provision in this case *unambiguously* provided when it would cease accruing or as described in Section 5.0 of the MSA.

The Court also rejects Defendant's arguments that the "liquidated damage provision" in this case is not reasonable. While the Court agrees that liquidated damages provision are enforced when they are a fair and reasonable attempts to fix just compensation for anticipated loss caused by a breach, the Court disagrees with Defendant that this is not the case here. *Priebe & Sons v. United States*, 332 U.S. 407, 411, 68 S. Ct. 123, 126, 92 L. Ed. 32 (1947). The Court recognizes the liquidated damages provision here is fair and reasonable since it is not a fixed fee but instead considers the remaining months/term of the contract.[2] The Court is also not

---

[2] *In re Cellphone Termination Fee Cases*, 193 Cal App 4th 298, 122 Cal Rptr 3d 726 (2011), rehg denied (March 24, 2011), review denied (June 15, 2011), cert denied, 132 S Ct 555, 181 L Ed 2d 397 (2011) (Courts vacated provisions from cell phone plans that came with a fixed $250 early termination fee which would be levied even if termination occurred at the very end of the plan's duration).

persuaded that the early termination fee is "unconscionable" because it is not unreasonably high or grossly out of line nor does the rate "shock the conscience." [3]

### III. Attorney's Fees and Amount Owed

Plaintiff also seeks to enforce Section 7.0 of the MSA and requests the Court for an order awarding attorney's fees and costs. Section 7.0 of the MSA provides: "In any action between the parties to enforce any material provision of this Agreement, the prevailing party shall be entitled to recover its reasonable legal fees and court cost from the non-prevailing party in addition to whatever other relief a court may award."

Generally, courts follow the "American rule" when awarding attorney's fees. *Fleming v. Quigley*, 2003 Guam 4 ¶ 7. Under the American rule, parties are expecting to bear their own litigation expenses, including attorney's fees. *Id.* (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). However, there are recognized exceptions to his rule, which are attorney fees that are: (1) authorized by statute; (2) authorized by contract; or (3) allowed in judicially established equitable circumstances. *Id.* (citing *Young v. Redman*, 128 Cal. Rptr. 86, 91 (Ct. App. 1976)).

The Court finds 7.0 of the MSA and Amendment valid and enforceable. First, the Amendment to the MSA dated February 2016, signed by both parties, adopts the terms of the 2010 MSA as stated on page 3 that "except with respect to the changes effected by this Amendment, the [MSA] continues to remain in full force and effect." Decl. of Shana Bentley, Ex. 1 p. 4. Under the 2010 MSA, Section 7.0 awards the prevailing party its reasonable legal fees and court cost. Second, a lack of signature in the MSA does not preclude the enforcement of its terms where Defendant has clearly assumed the obligation of the contract by accepting the benefits and services. 18 GCA § 85325. Accordingly, the Court finds no reason to stray from its enforcement.

---

[3] *Schneider*, 400 F. App'x at 139 (citing *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199, 1213, 78 Cal.Rptr.2d 533 (1998); *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1314, 27 Cal.Rptr.3d 797 (2005)).

The Court, however, will hold its ruling in abeyance in deciding the exact amount owed to Plaintiff and whether such amount is reasonable until the parties properly address the request to Dismiss Defendant's Counterclaim.

## IV.   Defendant's Counterclaim

Plaintiff in its Reply moves for the first time to dismiss Defendant's counterclaim because its damages are not collectible under the MSA and Amendment. Defendant's counterclaim alleged it suffered damages "as a result of Plaintiff's breach of the Platinum Agreement in an amount to be proven at trial." Answer and Counterclaim, at p.4. The Platinum Service Package included a service repair response time of two hours or less and correction within four hours if the phone service was interrupted.

Defendant's opposition to the instant motion asserts that it was "Plaintiff's breach of the 2016 contract" that caused it to issue its notice of termination of services. Def.'s Opp. at pp. 3-4. Defendant cites to two instances, in August 2017 and October 2017, where Plaintiff did not respond within two hours or correct the problem within four hours as required by the Platinum Service Package. *Id.* at p. 3.

The Court finds addressing this belated request without affording Defendant notice and an opportunity to respond would run contrary to the interest of justice. The Court hereby reminds the parties that the Court will only address motions that comply with the appropriate civil and local rules.

### Conclusion

For these reasons, the Court hereby GRANTS Plaintiff's Motion of Summary Judgment.

SO ORDERED this _____**JUL 1 1 2019**_____, *nunc pro tunc* to May 13, 2019.

**HONORABLE MARIA T. CENZON**
JUDGE, SUPERIOR COURT OF GUAM